# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RYAN GRAHAM, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>   v.<br><br>PIXARBIO CORPORATION, f/k/a BMP HOLDINGS, INC., and FRANCIS REYNOLDS,<br>                Defendants. | Case No.:<br><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Ryan Graham ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), conference call transcripts, news reports, press releases issued by Defendants, and other publicly available documents, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.      This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Defendant PixarBio Corporation ("PixarBio" or the "Company") securities between October 31, 2016 through January 20, 2017 inclusive (the "Class Period"). This action is brought on behalf of the Class for violations of Sections 11, and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l(a)(1), and 77o, and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2.      PixarBio is a specialty pharmaceutical/biotechnology company focused on pre-clinical and commercial development of novel neurological drug delivery systems for post-operative pain.

3.      On October 31, 2016, the Company completed a short-form merger with it's the parent, BMP Holdings, Inc. and began its initial public offering of stock ("IPO"), trading on the over-the-counter markets under the symbol "PXRB." The Company's press releases and registration statement, filed on mid-November, touted the company's development prospects and qualifications of key employees and shareholders.

4.      On January 3, 2017, PixarBio announced a takeover bid for InVivo Therapeutics Corporation, a publicly-traded biotechnology company originally co-founded by PixarBio's CEO,

Francis M. Reynolds, who resigned suddenly in 2013 from InVivo and was subsequently sued by them for breach of fiduciary duties.

5.      The same day, InVivo dismissed PixarBio's purported takeover bid, stating that it had no contact with PixarBio regarding any business combination and calling PixarBio's takeover announcement  "not credible."

6.      On January 23, 2017, the SEC announced that it had temporarily halted trading of PixarBio stock because the "market for the security appears to reflect manipulative or deceptive activities," and expressing concerns "regarding the accuracy of assertions by PixarBio in press releases and its Form S-1 concerning, among other things: (1) the company's business combinations and current shareholders; (2) the identity and qualifications of key shareholders and employees; and (3) the company's current and prospective development efforts."

7.      From January 3, 2017 through January 20, 2017, when the SEC halted trading of PixarBio shares, the Company's stock fell nearly 37%, causing tens of millions in losses to investors.

8.      Throughout the Class Period, Defendants made false and/or misleading statements, failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose and/or made false and/or misleading statements regarding: 1) the company's business combinations and current shareholders; (2) the identity and qualifications of key shareholders and employees; and (3) the company's current and prospective development efforts, and (4) that, as a result of the foregoing, the Company's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, and current illiquidity of the Company's stock, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The federal law claims asserted herein arise under §§ 11, 12(a)(1), and 15 of the Securities Act, 15 U.S.C. §§ 77k and 77o, and §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, §22 of the Securities Act, 15 U.S.C. § 77v, and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

12.     This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

13.     Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), as the Company has its principal executive offices located in this District and conducts substantial business here.

14.     In connection with the acts, omissions, conduct and other wrongs in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

15.     Plaintiff Ryan Graham was a shareholder of the Company during the Class Period. As set forth in the accompanying certification, incorporated by reference herein, Plaintiff acquired and held shares of the Company at artificially inflated prices during the Class Period and has been damaged by the revelation of the Company's material misrepresentations and material omissions.

16.     Defendant PixarBio is a Delaware corporation with its principal executive offices located at 200 Boston Avenue, Suite 2875, Medford, Massachusetts 02155. The Company purports to be a specialty pharmaceutical/biotechnology company focused on pre-clinical and commercial development of novel neurological drug delivery systems for post-operative pain.

17.     Defendant Francis M. Reynolds ("Reynolds") co-founded PixarBio CorporationNevada ("PixarBio Nevada") in 2013, which, as detailed below, later became PixarBio. Defendant Reynolds has been the Chairman, CEO, chief financial officer, and Chief Scientific Officer of PixarBio since 2013. Reynolds owns approximately 59% of the outstanding stock of PixarBio.

18.     Because of his positions at the Company, Reynolds possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. Reynolds authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected. Because of his positions within the Company and his access to material non-public information available to him but not to the public, Reynolds knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the

4

positive representations being made were false and misleading. Reynolds is liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

*Background*

19.     According to PixarBio's public filings, PixarBio Nevada was founded by Reynolds and Rober S. Langer ("Langer") in 2013. In August 2014, BMP Holdings, Inc. ("BMP") was incorporated under the laws of the State of Delaware by Reynolds and Langer.

20.     On October 30, 2016, BMP completed a short-form merger, through PixarBio Acquisition Corp., with PixarBio Nevada. As a result of the merger, PixarBio Nevada merged out of existence and BMP, the surviving entity, was reanamed "PixarBio Corporation."

21.     PixarBio purports to be a specialty pharmaceutical/biotechnology company focused on pre-clinical and commercial development of novel neurological drug delivery systems for post-operative pain. The Company is incorporated in Delaware with its principal executive offices located at 200 Boston Avenue, Suite 2875, Medford, Massachusetts 02155.

22.     On October 31, 2016, PixarBio began publicly trading its stock on the OTC Markets under the stock symbol "PXRB." On November 8, 2016, PixarBio began trading its stock on the OTCQB Marketplace under the stock symbol "PXRB." On November 28, 2016, PixarBio began trading its stock on the OTCQX Marketplace under the stock symbol "PXRB."

23.     Prior to forming PixarBio, Defendant Reynolds, served as the CEO, and CFO of InVivo Therapeutics Corp., ("InVivo") a research and clinical-stage biomaterials and biotechnology company from 2005 to 2013.

24.     Shortly after Reynolds resigned from InVivo in 2013, InVivo filed a lawsuit against Reynolds alleging breaches of fiduciary duties, breach of contract, conversion, misappropriation of corporate assets, unjust enrichment, corporate waste, and seeks money damages and an

accounting. That lawsuit is still pending in Middlesex Superior Court, Middlesex County, Massachusetts.

***Materially False and Misleading Statements Issued During the Class Period***

25.   On October 11, 2016, PixarBio issued a press release entitled "PixarBio Corporation div. BMP Holdings Corp Announces a 10:1 Stock Split and Stock Symbol Change," stating, which, among other things, represented to investors that "PixarBio expects to quickly up-list to the NASDAQ in Q4 2016. The press release states, in pertinent part:

**PixarBio Corporation div. BMP Holdings Corp Announces a 10:1 Stock Split and Stock Symbol Change**

Posted on October 11, 2016
**Cambridge, Massachusetts** (October 11, 2016): PixarBio Corporation, inventors of NeuroRelease$^{TM}$, a novel morphine replacement, non-opiate/opioid, non-addictive pain treatment, is pleased to announce BMP Holdings (PXRB:OTC) a division of PixarBio Corporation has executed a 10:1 stock split in preparation of closing its merger with its parent company PixarBio Corporation.

In recognition of public trading as PixarBio Corporation, BMP Holdings stock symbol has been changed to PXRB. The 10:1 stock split will provide PixarBio with an important NASDAQ listing requirement.  PixarBio expects to quickly up-list to the NASDAQ in Q4 2016.

The merger with BMP Holdings will be finalized on October 21, 2016 and public trading of the new PixarBio Corporation will begin on Monday October 24, 2016.

Accredited investors according to the SEC act of 1934, can receive investment information by emailing info@pixarbio.com.

**The NeuroRelease$^{TM}$ Platform: Non-Addictive and Non-opiate Treatment of Pain**

NeuroRelease$^{TM}$ is a morphine replacement, and non-addictive pain platform for the surgical/hospital setting, or for acute and chronic pain. First product FDA approval for the platform will be for a 14-day post-surgical pain treatment and it is expected in late 2018.

Major Benefits of NeuroRelease$^{TM}$:

- Effects only sensory signals
- No effect on locomotion nerve fibers, so patients can enter physical therapy quickly
- Maintains two-point discriminate touch so patients can function

- No effect on proprioception so no effect on a person feeling of well-being

Therefore, patients will maintain two-point discriminate touch, control of their locomotion nerve fibers so they control voluntary movement to enter rehabilitation quickly with a non-addictive morphine replacement. PixarBio's NeuroRelease™ pain platform also includes 4-8 hour, 3-day, 7-day, 14-day and 90-Day pain treatments all have expected FDA approvals in 2020. NeuroRelease™ is biodegradable, and it's non-toxic so NeuroRelease™ can be re-injected to extend treatment timelines.

PixarBio Corporation was awarded the Boston Business Journal's "2016 Best Places to Work". The award recognizes PixarBio as one of the region's best firms, offering the greatest professional opportunities and work environments to innovate.

26.     The Class Period begins on October 31, 2016. On that day, PixarBio issued a press release, and filed the same on Form 8-K with the SEC, entitled "PixarBio Corporation Finalized its Merger Transaction with BMP Holdings, Stock Trading on the OTC Markets Begins Monday October 31, 2016 Under New Stock Symbol PXRB," announcing the Company's IPO and stating, in pertinent part:

**PixarBio Corporation, Finalized its Merger Transaction with BMP Holdings, Stock Trading on The OTC Markets Begins Monday October 31, 2016 Under New Stock Symbol PXRB**

Cambridge, Massachusetts (October 30, 2016): PixarBio Corporation, inventor of NeuroRelease™, a morphine replacement, non-opiate/opioid, non-addictive pain treatment, is pleased to announce that PixarBio Corporation has finalized its merger transaction with BMP Holdings, a division of the Company, effective Monday October 31, 2016 at 8:00AM EST.

Public trading of stock will begin at 9:30AM EST Monday, October 31, 2016 on the OTC Markets.  PixarBio Corporation will submit a Super 8K early this week with details of the Merger.

The company will file a S-1 registering all shares within 21 days of the merger or by November 21, 2016.

The company expects to submit an application to list on NASDAQ in the fourth quarter of 2016.

In summary:

- Stock trading on Monday October 31, 2016 9:30AM EST under stock symbol PXRB
- The surviving company BMP Holdings will change its name to PixarBio Corporation, effective with FINRA on Tuesday, November 1, 2016.
- For just one day Monday October 31, the stock symbol PXRB will align with company name BMP Holding. The name of BMP Holding will change on the OTC Markets on Tuesday November 1, 2016 to PixarBio Corporation.
- Potential investors will have the company name, PixarBio Corporation and the Stock Symbol PXRB fully updated on the OTC Markets on Tuesday November 1, 2016.

**The NeuroRelease$^{TM}$ Platform: Non-Addictive and Non-opiate Treatment of Pain**

NeuroRelease$^{TM}$ is a morphine replacement, and non-addictive pain platform for the surgical/hospital setting, for the battlefield, or for acute and chronic pain. First product FDA approval for the platform will be for a 14-day post-surgical pain treatment and it is expected in late 2018.

Major Benefits of NeuroRelease$^{TM}$

- Effects only sensory signals
- No effect on locomotion nerve fibers, so patients can enter physical therapy quickly
- Maintains two-point discriminate touch so patients can function
- No effect on proprioception so no effect on a person feeling of well-being

Therefore, patients will maintain two-point discriminate touch, control of their locomotion nerve fibers so they control voluntary movement to enter rehabilitation quickly with a non-addictive morphine replacement. PixarBio's NeuroRelease$^{TM}$ pain platform also includes 4-8 hour, 3-day, 7-day, 14-day and 90-Day pain treatments all have expected FDA approvals in 2020. NeuroRelease$^{TM}$is biodegradable, and it's non-toxic so NeuroRelease$^{TM}$ can be re-injected to extend treatment timelines.

PixarBio Corporation was awarded the Boston Business Journal's "2016 Best Places to Work". The award recognizes PixarBio as one of the region's best firms, offering the greatest professional opportunities and work environments to innovate.

27.     On November 15, 2016, the Company filed with the SEC its quarterly report on

Form 10-Q for the three and nine month periods ended September 30, 2016, which provided,

among other things, the Company's financial results for the three and nine month periods ended

September 30, 2016, as well as the company's current and prospective development efforts.

28.     The Company's November 15, 2016 Form 10-Q contained a certification pursuant

to the Sarbanes-Oxley Act of 2002, signed by Defendant Reynolds, who certified:

> 1. I have reviewed this Quarterly Report on Form 10-Q of PixarBio Corporation (f.k.a. BMP Holdings Inc.);
>
> 2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;
>
> 3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;
>
> 4. The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:
>
> > (a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;
> >
> > (b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under my supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with U. S. generally accepted accounting principles;
> >
> > (c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and
> >
> > (d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal

quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

29.    On November 23, 2016, PixarBio filed with the SEC on Form S-1 a preliminary registration statement (the "Registration Statement"), offering for sale on the over-the-counter markets shares of PixarBio common stock and detailing, among other things, the identity and qualifications of certain shareholders and employees, security ownership of certain beneficial owners and management, the Company's current and prospective development efforts, and the company's business combinations. The November 23, 2016 Registration was signed by Defendant Reynolds.

30.    On January 3, 2017, PixarBio issued a press release, and filed the same on Form 8-K with the SEC, entitled "It's Time to Make US Pharma GREAT Again, By Combining Two Frank Reynolds' Founded Pharmas, PixarBio Corp (OTCQX:PXRB) and InVivo Therapeutics (NASDAQ:NVIV). The $77,000,000 Stock Offer Will Create a New Pharma Called Reynolds Therapeutics Corporation to Solve the Opiate Crisis and To Regenerate Chronic Spinal Cord In Humans and Finally Cure Paralysis." The press release announced a $77 million takeover bid by PixarBio for InVivo and stated, in pertinent part:

**It's Time to Make US Pharma GREAT Again, By Combining Two Frank Reynolds' Founded Pharmas, PixarBio Corp (OTCQX:PXRB) and InVivo Therapeutics (NASDAQ:NVIV). The $77,000,000 Stock Offer Will Create a New Pharma Called Reynolds Therapeutics Corporation to Solve the Opiate Crisis and To Regenerate Chronic Spinal Cord In Humans and Finally Cure Paralysis**

Cambridge, Massachusetts (January 3, 2017): PixarBio Corporation, (OTCQX: PXRB) today announced a take-over bid to acquire InVivo Therapeutics the company PixarBio CEO Frank Reynolds founded in 2005. The deal is expected to close in Q1 2017.

PixarBio Board of Directors has approved the offer, Board member Derek Bridges explained "As a Board, we're focused on responding to the opiate/opioid crisis with the development of NeuroRelease, and to solving Neurosciences biggest challenges in spinal cord injury, epilepsy, and Parkinson's disease. Our top priority is to replace Morphine, Percocet, Vicodin and other addictive opiates in the healthcare system. The threshold for US FDA approval for non-opiate post-surgical pain treatments is set low by Exparel, and will be easy to replace once NeuroRelease is FDA approved, which we expect in early 2019. In regards to neuro-trauma, we see great synergies for PXRB and NVIV shareholders combining both NVIV and PXRB patent portfolios. We'll rename PixarBio Corporation, Reynolds Therapeutics Corporation. Reynolds Therapeutics' R&D pipeline will be focused on developing breakthrough neurological treatments that will reduce costs all around the healthcare system. Reynolds Therapeutics will be a new type of Life Science Pharma focused on acute/chronic pain, acute/chronic spinal cord injury, adaptive technologies, epilepsy, and Parkinson's disease. Our portfolio will be FDA classified as either new drugs, new biologics, new devices and/or combo drug/device/biologics so the future is exciting for patients and we'll create a rare opportunity for investors interested in the future of non-addictive pain treatments and other challenging neurological conditions."

**PXRB Value Proposition for NVIV Shareholder: Clear and Obvious**

- No more down rounds by NVIV CEO Mark Perrin
- **NVIV closed on 12/31/2016 at $4.20/share**
- NVIV began 2016 at $7.20/share
- **NVIV down ~46% in 2016, a continued spiral downward! PXRB can Stop it**
- NVIV stock is back near its 2010 IPO share price of $4.00/share (split-adjusted)
- NVIV has hit its 2010 IPO price of $4.00/share, TWICE since Frank Reynolds resigned, once in 2013 and here we are again near $4.00/share in 2017
- It's time for a change at NVIV, **Stop The NVIV downward spiral**

- **Valuable sustainable stock in a combined PXRB/NVIV called Reynolds Therapeutics Corporation**

**On October 30, 2016 PixarBio (PXRB) closed a private offering at $2.00/sh. and closed on 12/31/2016 at $4.59/sh. up 129% in 2016 with a market cap over $415,000,000**

As one of Frank Reynolds' fellow Wharton Alumni, President-Elect Donald J. Trump might say **"It's time to Make US Pharma GREAT AGAIN!!"**

"It's been over 3.5 years since I resigned as CEO of InVivo Therapeutics Corporation, to found PixarBio Corporation (PXRB) in August 2013. It's clear that 2013-2017 have not been great years for the NVIV CEO & the NVIV Board of Directors. The round of recent MAJOR exits makes it a perfect time to keep the required exits for success going. It's time to focus on shareholder value, and REAL change at NVIV. I founded InVivo Therapeutics over 11 years ago but the last 3.5 years have been a black hole for investor's money, and the NVIV team has had a real dead spot in innovation failing in the area of shareholder value creation, so it's time for real Change", said PixarBio CEO Frank Reynolds.

**NVIV Recent Exits in Q4 2016: Read the "Tea Leaves" of Change, Hopefully Not Finished…**

- We've watched the NVIV legal team 2011-2016, Greenberg Traurig, replaced with Wilmer Hale…DONE
- Since 2013, we've observed two NVIV CFOs replaced…we should know their exit deals…DONE
- We've observed John McCarthy the Chairman of the Board of NVIV replaced...DONE
- We've observed NVIV CEOs, guide the stock back to nears its 2010 IPO price $4.00/share twice since 2013…He Should Be DONE
- We see Rich Roberts and Ken DiPietro still on the Board...value destroyers, whose own histories in our PXRB Board's opinion make them unfit for ANY public board so they must resign from the NVIV Board of Directors.

Will we see Dr Rich Roberts and Ken DiPietro resign next? NVIV shareholders must be dreaming as they read this thinking, a fresh start without Roberts and DiPietro...GRAND SLAM. LOVE THE NEW TEAM.

"We all know that NVIV current CEO Mark Perin's took his company before NVIV as CEO into bankruptcy, and Perin has had 3 years (maybe two years too long) that's enough time to succeed with a Frank Reynolds' Neuroscaffold technology so it's time for change. The CEO of NVIV needs to be replaced to have a shot at commercializing NVIVs true value, the NeuroScaffold for treating acute spinal cord injury invented by Frank Reynolds.", said PixarBio CEO Frank Reynolds

## NVIV MAJOR ISSUES

- Terrible Stock Performance, Terrible CEO, and Terrible Board of Directors 2013-2017
- Without conducting an exit interview of NVIV Founder, NVIV primary NeuroScaffold inventor and patent holder Frank Reynolds, NVIV shareholders have struggled to maintain the $520,000,000 in value created by Frank Reynolds, and today at $136mm they are dreadfully overvalued.
- It took years for NVIV to notify Frank Reynolds of their patent assignment issue, and Frank Reynolds will not provide FREE patents to NVIV. That request was ridiculous.
- There's never been a bridge for NVIV shareholders to own the commercial rights to the original Neuroscaffold and Frank Reynolds and PXRB can provide that to NVIV shareholders.
- Merging PXRB and NVIV is the only pathway for NVIV shareholders to have commercial rights to all of Frank Reynolds Neuroscaffold patents, Pain, Epilepsy, and Parkinson's know-how which is a HUGE win for NVIV shareholders
- By combining the PXRB and NVIV patent portfolios under one roof, the world of Neuroscience will be changed forever with a steady stream of R&D portfolio growth 2017-2039 to replace addictive opiates treating post-surgical pain, with a wide range of acute and chronic pain treatments, to develop acute and chronic spinal cord injury treatments, and to develop epilepsy and Parkinson's disease treatments.

## NVIV Under Frank Reynolds' Inventions and Leadership 2005 -2013

- NVIV Market Cap went from $00.00 in November 2005, to $520,000,000 in July 2013
- NVIV shares hit a high of $24.80/share (split-adjusted)
- NVIV had years of cash and equivalents when Frank Reynolds resigned
- Frank Reynolds conceived and patented The Neuroscaffold with his personal checks, lawyers and contracts
- Frank Reynolds invented a Thick R&D portfolio with 7 Products in the pipeline 2005 – 2013.
- Today Non-opiate pain replacements are the hottest space in medicine but NVIV missed it.

## NVIV After Frank Reynolds August 2013-2017

- Stock Plummeted within 60 days of Frank's resignation, by Sept-Oct 2013, the Board and management of NVIV had one product in-process at the FDA, and the stock plummeted to near $4.00/sh. (split-adjusted), which was Frank Reynolds' NVIV 2010 IPO share price
- In August 2013, Frank Reynolds had two of his inventions in-process for US FDA approval, but the NVIV Board of independent Board members

didn't know the R&D pipeline and killed off a thick R&D portfolio including novel, non-opiate pain treatments invented by Frank Reynolds.

- NVIV Missed the Non-opiate pain market
- On Dec 31, 2016 at $4.20 NVIV is back to near its 2010 IPO price of about $4.00 (split-adjusted) for the second time since 2010 after hitting $4.00 in 2013.
- The 2013 NVIV Board of Directors is being replaced, but not fast enough

**Is NVIV really worth $136,000,000?**

The PixarBio offering price for NVIV is discounted to $77,000,000, or a take-under price because NVIV has failed to protect the Neuroscaffold's value, and in 2017, it is now back to near Frank Reynolds' 2010 IPO price per share of $4.00 (split-adjusted).

NVIV is near the 2010 $4.00 IPO share price, for the second time in 3.5 years since Frank Reynolds resigned.

"It's time for me to take back the technology and re-value what I invented, and bring my neurological patent portfolio to market after merging PXRB with NVIV", said PixarBio CEO, CFO, and Chief Science Officer Frank Reynolds. WE GOT THIS!!

**Major Benefits to NVIV Shareholders**

- NVIV shareholders get a great management team of R&D leaders from PXRB.
- A PXRB executive team with a history of growing shareholder value
- We believe the shareholder value will increase after NVIV is acquired for $77,000,000
- Increases probability of a Frank Reynolds Neuroscaffold patent deal to commercialize NVIV products creating the first possibility of a revenue stream for NVIV
- PXRB can solve NVIV's 2017 cleanroom constraints
- Frank Reynolds' original NVIV NeuroScaffold invention team currently works for PixarBio, so it simple plug and play on the SCI R&D treatments for chronic SCI patients. WE GOT THIS!!
- Brings true concept of invention back to NVIV shareholders and hope to chronic SCI patients
- What has NVIV invented since August 2013?
- PXRB's cGMP manufacturing facility coming on-line this summer 2017 to solve the NVIV crisis
- Under one roof the new company will be called Reynolds Therapeutics and NVIV shareholders can benefit from Frank Reynolds Key PXRB project, to regenerate human spinal cord for a chronic spinal cord injury patient

**A New Reynolds Therapeutics Will Deliver Financial Results for NVIV and PXRB Shareholders**

- Frank Reynolds was 2013 Boston Business Journal CFO of the year Finalist
- Combined companies have cash through 2018, with plenty of time to avoid another NVIV down-round.
- Only chance for NVIV shareholders to gain commercialization rights to a complete suite of NeuroScaffold patents combining PXRB and NVIV Neuroscaffold patents.
- PixarBio's Inventors of NeuroRelease a non-addictive, non-opiate morphine replacement has a thick R&D pipeline for the most desperate space in medicine, post-surgical pain, acute and chronic pain, that can remove addictive opiates from the hospital setting.
- PixarBio is the leader to replace opiates, and 92,000,000 surgeries per year in the USA we have the largest potential market in clinical medicine…acute and chronic pain
- PixarBio pipeline includes novel neuroscaffolds for acute and chronic spinal cord injury, drug delivery systems for epilepsy and Parkinson's.
- Expanded R&D portfolio Licensing Opportunities for all NVIV and PXRB Shareholders

The offer is contingent that none of the existing directors continuing to serve on the surviving entity.

**Justification for NVIV Take-under at $77,000,000**

- NVIV lacks Frank Reynolds Patent rights to commercialize the NeuroScaffold, the probability of a deal is zero under current Board of Directors and CEO
- Frank Reynolds has rejected NVIV request to assign rights to Neuroscaffold patent
- NVIV never compensated Frank Reynolds with shares for his inventions, and NVIV expects the use of the Neuroscaffold patents for free, but there will be a cost, and that cost must be factored into the current NVIV valuation, setting the new valuation around $77,000,000
- Since Reynolds resigned in 2013, NVIV CEOs twice have managed the stock down to Frank Reynolds' 2010 IPO price, CEO Mark Perrin has got to resign
- NVIV needs a CFO: Reynolds was finalist for CFO of the Year 2013. The temporary CFO brought in Q4 2016, has no EXPERIENCE as a public CFO, she is an internal hire with no leverage against the Board or leverage on Wall Street, so current NVIV valuation is way too high
- NVIV is back to its IPO again, A CFO MUST HAVE some Wall street exposure, this is NO TIME for training wheels
- PixarBio Founder Frank Reynolds not only won "2013 Boston Business Journal Finalist for CFO of the Year" but Frank Reynolds won the 2013 and 2016 Boston Business Journal Best Company to Work"

- During his career, Frank Reynolds is the ONLY CEO/CFO in Early Stage Pharma to have never done a down-round.
- Frank Reynolds education at Univ Penn: Wharton School, Harvard Business School, MIT-School, St Joe's Haub School of Business, Chestnut Hill College, and Temple Univ: Fox School of Business have provided him decades of more Wall Street experience than the Jan 2017 NVIV temporary CFO
- Frank Reynolds means a new life for NVIV shareholders

Today NVIV stock is back to its 2010 IPO Share price of about $4.00 (split-adjusted), for the second time since 2010, and both occurred after Reynolds left in 2013 and 2016.

"Our offering price of $77,000,000 is discounted, because NVIV has failed to develop my patents, science and know-how. NVIV appears to have lost the historically significant SCI primate research data, and they are now back to my 2010 IPO share price, for the second time in 3.5 years but its 2017. It is time I take back the technology I invented to bring my neurological R&D portfolio to market by acquiring NVIV and saving the NVIV shareholder from more years of down-rounds.", said PixarBio CEO Frank Reynolds

**Reynolds Therapeutics Value and Valuation: A typical yet classic acquisition**

**NVIV Needs New Management**

NVIV was founded by Frank Reynolds, and PixarBio was also Founded by Frank Reynolds so it's time to get back to basics, and make InVivo Therapeutics patent portfolio great again by selling to NVIV to PixarBio Corp and to create a new Reynolds Therapeutics.

The Reynolds Therapeutics valuation is based on real synergies. PixarBio market opportunity is HUGE with a market cap over $415,000,000. Tackling the morphine and opiate replacement market with non-opiate, and non-addictive new drugs to replace most opiates/opioids with expected US FDA approval in early 2019 is in the PixarBio wheelhouse for success. PXRB non-opiate platform provides a huge present and future valuation. PXRB is currently undervalued.

A purchase price of $77,000,000 for NVIV brings great value to PXRB shareholders. We can see a patent deal with Reynolds putting value back into the NVIV business unit, then complementing the PXRB Neuroscaffold platform.

**<u>Return on Investment for NVIV Shareholders…The Decision is A NO-BRAINER</u>**

Reynolds Therapeutics is a story based on a classic case of a GREAT PixarBio mgmt. team buying NVIVs bad mgmt. team and Reynolds Therapeutics applying Great R&D mgmt. principles to regain the Neuroscaffold shareholder value. We

will turn the NVIV SCI innovation engine BACK-ON to complement PixarBio's SCI Neuro-trauma Innovative R&D Portfolio, and PixarBio Mgmt. will monetize the NVIV value.

- PixarBio's Post-surgical pain treatment market is HUGE at 92,000,000 yearly surgeries in USA, representing revenue opportunity that exceeds $30B per year
- In addition to the surgical market, PixarBio acute/chronic pain treatment such as cancer, sports injuries, trauma, degenerative disease, diabetic neuropathy and many others and those acute/chronic pain markets exceed $40B per year
- NVIV has a potential market of about 12,000 people paralyzed per year in the USA, but has targeted through FDA application just a tiny subset of the 12,000 injuries, possibly as low as 50 SCI injuries per year, and PXRB can solve that problem expanding the SCI market opportunity near 4,000 treatments per year
- Reynolds Therapeutics will help balance the risk for NVIV shareholders for the small market risk of acute spinal cord injury with PXRB's Huge Post-surgical pain mkt. potential
- PixarBio's Neuro-trauma R&D portfolio helps mitigate NVIV investor risks
- In Q4 2016, Frank Reynolds took PXRB Public at $2.00 per share closing 12/31/2016 at $4.59 per share for a 129% ROI in 2016. NVIV was down ~46%
- PixarBio, The inventor of NeuroRelease, a potential morphine replacement that's non-addictive and non-opiate is undervalued since October 31, 2016, when it became publicly traded.
- Combining PXRB with NVIV assets brings Frank Reynolds patents together, and the synergies will be great for patients and investors.
- Obtaining a Neuroscaffold patent agreement with Reynolds, provides NVIV assets a much higher valuation than the $77,000,000 we see as the NVIV value today.

"Most importantly, the neurological R&D space desperately needs a new generation of leaders to create, capture and monetize inventions in pharma. If you look at recent CEO moves like Biogen's and others CEO's in neuroscience are failing. Neuroscience Pharma needs new industry leadership and PixarBio is perfectly prepared to lead, as investors and patients become more desperate for returns from investments. PixarBio's 2017 Deal making is NOT done. The industry needs consolidation, so let's get busy and make US Pharma great again", said Frank Reynolds PixarBio CEO and Founder

**NVIV Background**

Founded by Frank Reynolds on November 28, 2005 and added MIT's Robert S Langer as Advisor to CEO and Co-Founder in Q4 2006.

**PXRB Background**

Co-Founded by Frank Reynolds, Katrin Holzhaus and MIT's Robert S. Langer on August 29, 2013

31.     On January 4, 2017, PixarBio issued another press release, and filed the same on

Form 8-K with the SEC, upping its supposed takeover bid for InVivo to $100 million.   The

Company's press release provided, in pertinent part:

**PixarBio Corporation Responds to InVivo Therapeutics False Patent and Intellectual Property Claims**

Posted on January 4, 2017

Cambridge, Massachusetts (January 4, 2017): PixarBio Corporation, (OTCQX: PXRB) developers of NeuroRelease™, a morphine replacement, non-opiate/opioid, non-addictive pain treatment with FDA approval expected in early 2019, announced a response to InVivo Therapeutics press release dated January 3, 2017. The press release claims that, "InVivo has an exclusive license in the field of spinal cord injury to all patents and patent applications in prosecution covering the Neuro-Spinal Scaffold™. Frank Reynolds is not an inventor on any of these patents or patent applications, so no assignment is required and none was requested."

**The InVivo response is a Legal Play on Trademarks; Real Life Has Witnesses**

**Did InVivo Lose Records?**

Frank Reynolds filed over 40 patents applications at InVivo Therapeutics, capturing the Neuroscaffold in legal documents.

As the Founder of InVivo Therapeutics and the only employee of InVivo Therapeutics 2005-2008 he personally selected, hired, contracted, and paid with his own personal check to a few different patent law firms that filed his Neuroscaffold patents 2005-2008; and from Nov 2005 – August 2013 he was the ONLY scientist to attend every patent lawyer meeting for the InVivo NeuroScaffold.  He was the only scientist in more than 80% of NeuroScaffold patents meetings from 2005-2013 totaling more than 200 NeuroScaffold patent meetings.

Frank Reynolds stated, "Today I had over 20 former staff jump to my defense and I know I can find 100+ lawyers, employees, consultants, advisors, that all lived through my Neuroscaffold invention with me, as I hired them all along the way. InVivo must have lost years of records."

**"Legal Play on words" or "Play on Trademarks" in the InVivo response**

Reynolds stated. "I own the trademark for Neuroscaffold, and when NVIV learned of the USPTO ruling, they realized I would not sign over the trademarks so InVivo created a new trademark "Neuro-Spinal Scaffold" and that trademark was indeed created after I left InVivo so I didn't invent anything under that moniker or the trademark "Neuro-Spinal Scaffold" but I certainly invented the NeuroScaffold for spinal cord injury at InVivo Therapeutics 2005-20013 about a decade before InVivo even thought up the moniker or trademark "Neuro-Spinal Scaffold". The new mgmt. team should have conducted an exit interview with me in 2013".

If InVivo doesn't have any record of my inventorship 2005-2013, they are worse off than anyone can imagine, because we had less than 8 employees until 2010 so who can they claim invented it? I spent 110 hours per week from 2005-2013 inventing the NeuroScaffold.

What else did InVivo Management lose? Data from my historically significant primate studies for spinal cord injury? In 2017, InVivo still cannot locate the original primate study data processed 2008-2012.

**NVIV should not mislead investors based on mincing trademarked words.**

There are over 100 real people that know Frank Reynolds led the invention of the NeuroScaffold for Spinal cord injury so stop misleading with investors.

**We will increase our offer for InVivo Therapeutics to $100,000,000, but Richard Roberts and Ken DiPietro must resign from the Board of Directors and Mark Perin of course must resign.**

The real question is if they claim I'm not on patents: Are they so bad they couldn't lock up their founder and inventor, they should be replaced just for letting NVIV get this bad. Why didn't they get the founder on the invention documents? Why put out a statement that says the founder's not on patents, he's not signed over anything??…NOT BRIGHT, we all know to sign and lock up our stars.

The failure to conduct an exit interview resulted in lost IP to InVivo Therapeutics but that doesn't change the facts of reality that's recorded in 8 years of calendars, meetings minutes, and even an iPaq.

WE ALL KNOW, and Frank Reynolds knows who was the inventor on every NeuroScaffold patent call, and it was Frank Reynolds

**We look forward to the Board of InVivo Therapeutics taking a look around at this week's emergency meetings and asking who and what are they fighting for, is it really for shareholders?**

**We do not expect any major personnel changes after the acquisition except at the CEO and Board level.**

**We encourage the Board of Directors of InVivo Therapeutics to vote to be acquired by PixarBio, and they should do it as soon as possible**

**About PixarBio Corporation**

PixarBio is a public company traded on the OTC markets under the stock symbol PXRB. PixarBio is a specialty pharmaceutical/biotechnology company focused on pre-clinical and clinical commercial development of novel neurological drug delivery systems for post-operative pain. PixarBio researches and develops targeted delivery systems for drugs, devices, or biologics to treat pain, epilepsy, Parkinson's disease, and spinal cord injury. Our lead product platform, NeuroRelease™, has achieved sustained therapeutic release of non-opiate drugs for post-operative, acute and chronic pain in pre-clinical models. For more information, visit www.pixarbio.com.

*The Truth Begins To Emerge*

32.     On January 3, 2017, after PixarBio first announced its takeover bid for InVivo, InVivo responded with its own press release, entirely refuting PixarBio's takeover bid, stating that Invivo "has not had any discussions with PixarBio Corporation nor any other party regarding this matter," and calling the offer "not credible."

33.     On January 23, 2017, the SEC issued a release announcing the temporary suspension of trading in the securities of PixarBio Corporation, stating, among other things, that "the market for the security appears to reflect manipulative or deceptive activities." The release provided, in pertinent part:

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

SECURITIES EXCHANGE ACT OF 1934
Release No. 79852 / January 23, 2017

The Securities and Exchange Commission ("Commission") announced the temporary suspension, pursuant to Section 12(k) of the Securities Exchange Act of

1934 (the "Exchange Act"), of trading in the securities of PixarBio Corporation (OTCQB:PXRB), of Medford, Massachusetts at 9:30 a.m. on January 23, 2017, and terminating at 11:59 p.m. on February 3, 2017.

The Commission temporarily suspended trading in the securities of PixarBio because the market for the security appears to reflect manipulative or deceptive activities and because of questions regarding the accuracy of assertions by PixarBio in press releases and its Form S-1 concerning, among other things: (1) the company's business combinations and current shareholders; (2) the identity and qualifications of key shareholders and employees; and (3) the company's current and prospective development efforts. This order was entered pursuant to Section 12(k) of the Exchange Act.

The Commission cautions broker-dealers, shareholders, and prospective purchasers that they should carefully consider the foregoing information along with all other currently available information and any information subsequently issued by the company.

Further, brokers and dealers should be alert to the fact that, pursuant to Rule 15c2-11 under the Exchange Act, at the termination of the trading suspension, no quotation may be entered unless and until they have strictly complied with all of the provisions of the rule. If any broker or dealer has any questions as to whether or not he has complied with the rule, he should not enter any quotation but immediately contact the staff in the Division of Trading and Markets, Office of Interpretation and Guidance, at (202) 551-5777. If any broker or dealer is uncertain as to what is required by Rule 15c2-11, he should refrain from entering quotations relating to PixarBio's securities until such time as he has familiarized himself with the rule and is certain that all of its provisions have been met. If any broker or dealer enters any quotation which is in violation of the rule, the Commission will consider the need for prompt enforcement action.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired PixarBio securities between October 31, 2016 through January 23, 2016, inclusive. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

35.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, PixarBio securities were actively traded on the over-

the-counter markets. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. As of October 31, 2016—the day PixarBio made initiated its secondary offering—the Company had 80,209,976 shares of common stock outstanding and there were 235 shareholders of record.

36.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

      a.   Whether the Exchange Act was violated by Defendants;

      b.   Whether Defendants omitted and/or misrepresented material facts;

      c.   Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

      d.   Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

      e.   Whether the price of the Company's stock was artificially inflated; and

      f.   The extent of damage sustained by Class members and the appropriate measure of damages.

37.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

38.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

39.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## LOSS CAUSATION

40.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

41.     During the Class Period, Plaintiff and the Class purchased PixarBio securities at artificially inflated prices and were damaged thereby.

42.     On January 3, 2017, the Company reported an apparently false takeover bid for InVivo. On January 20, the SEC temporarily halted trading of PixarBio shares. From January 3, 2017 through January 20, 2017, when the SEC intervened, shares in PixarBio fell from $4.59 to $2.90 per share, nearly 37%. This decline is directly attributable to the Company's false representations about its development and business combination prospects.

## SCIENTER ALLEGATIONS

43.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding PixarBio, their control over, and/or receipt and/or

modification of PixarBio's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning PixarBio, participated in the fraudulent scheme alleged herein.

## FRAUD ON THE MARKET

44.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

a.  Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.  The omissions and misrepresentations were material;

c.  The Company's common stock traded in efficient markets;

d.  The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

e.  Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

45.     At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news ire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

**NO SAFE HARBOR**

46.     The statutory safe harbor provided for forward-looking statements under certain conditions do not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

47.     To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

**CAUSES OF ACTION**

**Count I**
**Violation of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder**
**(Against All Defendants)**

48.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

49.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50.     Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the Class Period.

51.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if

they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

**Count II**
**Violation of § 20(a) of the Exchange Act**
**(Against Reynolds)**

52.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

53.     Defendant Reynolds acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of his high-level positions at the Company, Defendant Reynolds had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. Defendant Reynolds was provided with or had unlimited access to the Company's reports, press releases, public filings and other statements alleged by Plaintiffs to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

54.     In particular, Reynolds had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

55.     As set forth above, PixarBio and Defendant Reynolds violated Section 10(b) and Rule 10b-5 by his acts and/or omissions as alleged in this Complaint. By virtue of his positions as controlling persons, Defendant Reynolds is liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

26

**Count III**
**Violation of Section 11 of the Securities Act**
**(Against All Defendants)**

56.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

57.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

58.     As issuer of the shares, PixarBio is strictly liable to Plaintiff and the Class for the misstatements and omissions.

59.     None of the Individual Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

60.     Plaintiff acquired PixarBio shares pursuant and/or traceable to the Registration Statement for the IPO.

61.     Plaintiff and the Class were harmed by the untrue statements of material fact in the Registration Statement. They purchased PixarBio stock at an inflated price as a result of Defendants' untrue statements of material fact in the Registration Statement.

**Count IV**
**Violation of Section 15 of the Securities Act**
**(Against Reynolds)**

62.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63.     Defendant Reynolds, by virtue of his offices, directorship, and specific acts was, at the time of the wrongs alleged herein and as set forth herein, controlling persons of PixarBio within

the meaning of Section 15 of the Securities Act. Reynolds had the power and influence and exercised the same to cause PixarBio to engage in the acts described herein.

64.    Defendant Reynolds' positions made him privy to and provided him with actual knowledge of the material fats concealed form Plaintiff and the Class.

65.    By virtue of the conduct alleged herein, Reynolds is liable for the aforesaid wrongful conduct and is liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

(b)    awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon.

(c)    awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

(d)    awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: January 30, 2017                          Respectfully submitted,


                                                 **BLOCK & LEVITON LLP**

                                                 By: /s/ Jeffrey C. Block
                                                 Jeffrey C. Block (BBO# 600747)
                                                 Steven P. Harte (BBO# 667948)
                                                 Bradley J. Vettraino  (BBO#691834)
                                                 155 Federal Street, Suite 400
                                                 Boston, Massachusetts 02110
                                                 Tel: (617) 398-5600
                                                 Fax: (617) 507-6020
                                                 jeff@blockesq.com
                                                 steven@blockesq.com
                                                 bradley@blockesq.com

## PLAINTIFF'S CERTIFICATION OF SECURITIES
## FRAUD CLASS ACTION COMPLAINT

I, **Ryan Graham**, hereby certify that the following is true and correct to the best of my knowledge, information and belief:

1. I have reviewed, and authorize the filling on my behalf of, the draft complaint against PixarBio Corporation
2. I did not purchase the securities which are the subject of the complaint at the direction of counsel, or in order to participate in any private action arising under the federal securities laws.
3. My transactions in the Company's securities during the Class Period are as follows:

| Date | Transaction | No. of shares | Price per share |
|---|---|---|---|
| 12/12/2016 | Buy | 1000 | $5.65 |

4. I am willing to serve as a representative party on behalf of the class in this action, including providing testimony at deposition and trial, if necessary.
5. During the three-year period preceding the date of my signing this Certification, I have never sought to be appointed nor have I ever been appointed as lead plaintiff or class representative in any class action arising under the securities laws of the United States.
6. I will not accept any payment for serving as a representative party on behalf of the Class beyond my pro rata share of any possible recovery, except for an award, as ordered or approved by the court, for reasonable costs and expenses (including lost wages) directly relating to my representation of the Class.

Signed under the penalties of perjury on **01/26/2017**.

Signature: